Richard F. Ensor (10877)
Michael C. Barnhill (12439)
VANTUS LAW GROUP, P.C.
3165 East Millrock Drive, Suite 160
Salt Lake City, Utah 84121
Telephone: (801) 833-0500
Facsimile: (801) 931-2500

Attorneys for Plaintiffs Alpha Real Estate Holdings, L.P., TC-Holman, LLC, TC-Hatfield, LLC, and Dec08Ceeree1, LLC

---

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALPHA REAL ESTATE HOLDINGS, L.P., a Delaware limited partnership, TC-HATFIELD, LLC, a Delaware limited liability company, and TC-HOLMAN, LLC, a Delaware limited liability company, DEC08CEEREE1, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> JABBES 6, INC., an Ohio Corporation, d/b/a RE/MAX VALLEY REAL ESTATE, RENEE DALESANDRO, an Ohio citizen, and DOES 1-10, <br><br> Defendants. | **FIRST AMENDED COMPLAINT AND JURY DEMAND** <br><br> Case No. 2:10-cv-1210 <br><br> Judge Dee Benson |

---

Plaintiff Alpha Real Estate Holdings, L.P., TC-Hatfield, LLC, TC-Holman, LLC, and

Dec08Ceeree1, LLC, by and through their undersigned counsel of record, hereby complains

against Defendants Jabbes 6, Inc. d/b/a Re/Max Valley Real Estate, Renee Dalesandro, and Does

1-10, and for causes of action alleged as follows:

## PARTIES

1.      Plaintiff Alpha Real Estate Holdings, L.P. ("Alpha") is a Delaware limited partnership with its primary place of business in Utah County, Utah.

2.      Plaintiff TC-Holman LLC is a Delaware limited liability company with its principal place of business in Utah County, Utah.

3.      Plaintiff TC-Hatfield, LLC is a Delaware limited liability company with its principal place of business in Utah County, Utah.

4.      Plaintiff Dec08Ceeree1, LLC is a Delaware limited liability company with its principal place of business in Utah County, Utah.

5.      Defendant Jabbes 6, Inc. d/b/a Re/Max Valley Real Estate (hereinafter "Defendant  Re/Max Valley") is an Ohio corporation with its principal place of business in Boardman, Ohio.  Defendant Re/Max Valley is a real estate broker licensed with the State of Ohio and an agent for Re/Max LLC, a large national real estate broker.

6.      Defendant Renee Dalesandro ("Defendant Dalesandro"), upon information and belief, is a resident of the State of Ohio.  Defendant Dalesandro is a real estate agent licensed with the State of Ohio and was employed by, and acted as an agent for, Defendant Re/Max Valley.

7.      Does 1-10 are individuals and entities who might be liable to Plaintiffs and who will be added to the case once discovery is conducted.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction of this matter pursuant to Defendants' removal of this matter from State Court, as set forth in Defendants' removal papers.

2

9.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to the claims occurred in this District.

10.     This Court has personal jurisdiction over all defendants because they have transacted business in the State of Utah in connection with the subject matter of this Complaint and because they have caused harm to Plaintiffs in the State of Utah.

11.     Defendants are thus subject to jurisdiction in this state pursuant to Utah's long arm statute, Utah Code Ann. § 78B-3-205(1) and (3), and have sufficient minimum contacts to satisfy the due process clause of the United States Constitution.

## FACTUAL ALLEGATIONS

**A.     Alpha Retains Defendant Re/Max Valley to Assist With Alpha's Rental Properties.**

12.     Alpha purchases residential real estate properties with the intent to invest funds to improve the properties, which Alpha will then rent.

13.     In 2009, Alpha purchased numerous residential properties throughout the State of Ohio.

14.     Shortly thereafter, Alpha entered into discussions regarding Defendant Re/Max Valley and Defendant Dalesandro managing the improvements to Alpha's properties, including the hiring of the proper contractors and the supervision of the same, and the subsequent rental and management of these properties once the improvements were completed.

15.     Defendant Dalesandro held herself, and Defendant Re/Max Valley, out as experts in the Ohio real estate market who Alpha could trust to ensure that the properties were properly improved, rented, and maintained.

3

16.     In or about April 2009, Defendant Re/Max Valley transmitted numerous property and rental management agreements to Alpha's offices in Utah County.  Defendant Re/Max Valley signed these contracts prior to transmittal; Alpha then executed these contracts in Utah and returned the contracts to Defendant Re/Max Valley.

17.     Defendant Dalesandro was to manage the improvements to the properties purchased by Alpha, and the subsequent rental of the same, on behalf of Defendant Re/Max Valley.

18.     Starting in Winter 2009, and continuing into Spring 2010, Defendant Dalesandro submitted bids to Alpha at its Utah offices for improvements to Alpha's properties in Ohio.

19.     Defendant Dalesandro told Alpha that she had ordered the work to be performed at each of the properties purchased by Alpha pursuant to these bids, and that said work was completed.

20.     Alpha paid Defendants for the improvements purportedly made on Alpha's properties.

21.     The total amount of payments made by Alpha to Defendant Dalesandro and Defendant Re/Max Valley totaled over $350,000.00.

22.     Defendants contacted Alpha's Utah County offices (by email or phone) dozens, if not hundreds, of times in regard to the above-referenced properties during the Winter, Spring, and Summer of 2010.

**B.     The Improvements To Alpha's Properties Were Never Completed.**

23.     Alpha paid Defendants for improvements and repairs that were never completed.

4

24.     To the contrary, very few, if any, of the improvements and repairs identified in the bids, and for which Alpha made payment, were completed.

25.     As a result of the failure to complete the improvements and repairs during the fall and winter, the properties owned by Alpha were not rented and, in some cases, are still not rented.

26.     In July 2010, Alpha employees traveled to Ohio to determine why the properties were not being rented.

27.     At that time, Alpha realized that the improvement and repair work for which it had paid Defendant Re/Max Valley had not been completed.

28.     Alpha relieved Defendants of all responsibility for the properties.

**C.      Defendants' Other Wrongful Acts Aimed At Alpha.**

29.     Alpha has been damaged by Defendants' other wrongful acts as well.

30.     Alpha paid approximately $40,000.00 to Defendants for yard maintenance and snow removal.  Upon information and belief, Defendants did not spend the $40,000.00 on yard maintenance and snow removal.

31.     Alpha purchased a property at 1442 Camp Street, Sandusky, Ohio.  As a result of Defendants' failure to make repairs and maintain this property, the local government instituted condemnation proceedings.  Alpha is contesting the condemnation proceedings but, at a minimum, has been damaged as a result of lost rent and the attorneys fees and the costs incurred in attempting to stop the condemnation proceedings.

32.     Defendant Dalesandro also misled Alpha into selling a property located at 2321 Reno Drive, Louisville, Ohio to a relative of Defendant Dalesandro, by falsely stating that the

5

property would be difficult to rent and that a land contract (seller financing) would be more successful. Defendant Dalesandro's statements were false and Defendant Dalesandro's family member successfully executed a land contract. Alpha would not have sold the property but for Defendant Dalesandro's false statements.

33.     Defendant Dalesandro further advised Alpha that another property would be difficult to rent and therefore should be sold. This statement was false, as the purchaser of the property already had a tenant lined up at the time Alpha sold the property. Alpha would not have sold the property but for Defendant Dalesandro's false statements.

34.     Defendants also failed to pay HOA dues on another property that Defendants had agreed to manage, which resulted in Alpha incurring attorneys fees and other costs.

35.     Moreover, in or about the end of May 2010, Defendants contacted Alpha's Utah County offices and presented a number of properties to Alpha as ideal purchases.

36.     Defendants advised Alpha that they were the selling broker on these properties, but that they could also represent Alpha.

37.     Alpha accordingly engaged Defendant Re/Max Valley to act as their agent for the purchase of an additional twelve properties in the Cleveland, Ohio area.

38.     Defendant Re/Max Valley assigned Defendant Dalesandro to assist Alpha with these purchases of real property.

39.     Alpha told Defendants Re/Max Valley and Dalesandro that Alpha wanted to purchase properties with strong rental histories, which would allow Alpha to own and rent the property for many years prior to selling the properties at some point in the future.

40.     Defendants Re/Max Valley and Dalesandro assisted Alpha with the purchase of

twelve properties in the Cleveland area, which required Defendant to call or email Alpha's Utah County offices on dozens of occasions and to transmit documents to Alpha's Utah County offices as well.

41.     Prior to purchasing the twelve properties, Alpha requested that Defendants provide a list of the renting history for each property.

42.     Defendants sent an email to Alpha at its Utah County offices with such a list for each of the twelve properties, identifying the purported rental history for each property for the time period from January 2010 to May 2010.  The purported rent history showed that each of the properties was occupied by a good tenant who paid the rent on time each month.

43.     This rent history was false, as many of the tenants in the properties failed to pay rent in the following months.

44.     Alpha also discovered that the non-paying tenants were several months behind on their rent payments and had to evict numerous tenants.

45.     Many months passed before Alpha was able to place acceptable, rent-paying tenants in these properties.

**D.     TC-Hatfield Retains Defendant Re/Max Valley To Act As Their Agent To Purchase Certain Properties.**

46.     In or about the end of May 2010, Defendants contacted TC-Hatfield at its Utah offices and presented a number of properties as ideal purchases.

47.     Defendants advised TC-Hatfield that they were the selling broker on these properties, but that they could also represent TC-Hatfield.

48.     TC-Hatfield therefore engaged Defendants Re/Max Valley and Dalesandro to assist with the purchase of certain properties in the Cleveland, Ohio area.

49.     TC-Hatfield told Defendants Re/Max Valley and Dalesandro that TC-Hatfield wanted to purchase properties with strong rental histories, which would allow TC-Hatfield to own and rent the property for many years prior to selling the properties at some point in the future.

50.     Defendants Re/Max Valley and Dalesandro assisted TC-Hatfield with the purchase of five properties in the Cleveland area, which required Defendant to call or email TC-Hatfield's Utah County offices on numerous occasions and to transmit documents to TC-Hatfield's Utah County offices as well.

**E.     Defendants' Wrongful Acts Aimed At TC-Hatfield.**

51.     Prior to purchasing the five properties, TC-Hatfield requested that Defendants provide a list of the renting history for each property.

52.     Defendants sent TC-Hatfield in Utah, via email, a list for each of the five properties, identifying the purported rental history for each property for the time period from January 2010 to May 2010. The purported rent history showed that each of the properties was occupied by a good tenant who paid the rent on time each month.

53.     This rent history was false, as many of the tenants in the properties failed to pay rent in the following months.

54.     TC-Hatfield also discovered that the non-paying tenants were several months behind on their rent payments and had to evict several tenants.

55.     Many months passed before TC-Hatfield was able to place acceptable, rent-paying tenants in these properties.

56.     Additionally, one of the properties that Defendants represented to be a residence

was actually a dilapidated warehouse. In fact, the purchase contract specifically discusses "existing residential properties only."

**F.** **TC-Holman Retains Defendant Re/Max Valley To Act As Their Agent To Purchase Certain Properties.**

57.     In or about the end of May 2010, Defendants contacted TC-Holman at its Utah offices and presented a number of properties as ideal purchases.

58.     Defendants advised TC-Holman that they were the selling broker on these properties, but that they could also represent TC-Holman.

59.     TC-Holman engaged Defendants Re/Max Valley and Dalesandro to assist with the purchase of certain properties in the Cleveland, Ohio area.

60.     TC-Holman told Defendants Re/Max Valley and Dalesandro that TC-Holman wanted to purchase properties with strong rental histories, which would allow TC-Holman to own and rent the property for many years prior to selling the properties at some point in the future.

61.     Defendants Re/Max Valley and Dalesandro assisted TC-Holman with the purchase of five properties in the Cleveland area, which required Defendants to call or email TC-Holman's Utah County offices on numerous occasions and to transmit documents to TC-Holman's Utah County offices as well.

**G.** **Defendants' Wrongful Acts Aimed At TC-Holman.**

62.     Prior to purchasing the five properties, TC-Holman requested that Defendants provide a list of the renting history for each property.

63.     Defendants sent such a list for each of the five properties via email to TC-Holman in Utah, identifying the purported rental history for each property for the time period from

9

January 2010 to May 2010. The purported rent history showed that each of the properties was occupied by a good tenant who paid the rent on time each month.

64. This rent history was false, as many of the tenants in the properties failed to pay rent in the following months.

65. TC-Holman also discovered that the non-paying tenants were several months behind on rent and had to evict numerous tenants.

66. Many months passed before TC-Holman was able to place acceptable, rent-paying tenants in these properties.

## H. Defendants' Wrongful Acts Aimed At Dec 08 Ceeree 1, LLC

67. As with the Alpha properties discussed above, Dec08Ceree 1 paid Defendants for improvements and repairs that were never completed for a home at 110 Riverdale, Elyria, Ohio.

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty— Alpha v. Re/Max Valley and Dalesandro)

68. Alpha repeats and incorporates by reference the foregoing allegations.

69. Defendants Re/Max Valley and Dalesandro owed a fiduciary duty to Alpha, namely to deal fairly and honestly with Alpha, to follow its instructions, to act honestly towards Alpha, and to preserve and enhance the property and earnings of Alpha's investment.

70. Defendants breached their fiduciary duty by undertaking the acts set forth above.

71. Alpha has suffered injury as a result of Defendants' breaches of their fiduciary duty.

72. Alpha has been damaged by Defendants' breaches of their fiduciary duty in an amount to be determined at trial, plus pre-judgment and post-judgment interest. Alpha is also entitled to punitive damages and to attorneys' fees as allowed by law.

## SECOND CAUSE OF ACTION
### (Negligent Supervision—Alpha v. Re/Max Valley)

73.     Alpha repeats and incorporates by reference the foregoing allegations.

74.     Defendant Re/Max Valley owed Alpha a duty to ensure that Defendant Re/Max Valley hired honest individuals and properly supervised its employees and agents.

75.     Defendant Re/Max Valley breached this duty by failing to properly supervise Defendant Dalesandro.

76.     Alpha has suffered injury proximately caused by Defendant Re/Max Valley's breach of its duty to properly supervise and manage Defendant Dalesandro.

## THIRD CAUSE OF ACTION
### (Breach of Contract – Alpha v.  Re/Max Valley)

77.     Alpha repeats and incorporates by reference the foregoing allegations.

78.     The real estate management agreements constitute valid and binding contracts between Alpha, on one hand, and Defendant Re/Max Valley, on the other hand.

79.     Alpha fulfilled all of its obligations under the contracts.

80.     Defendant Re/Max Valley breached its obligations under the contracts as set forth above.

81.     As a direct and proximate result of Defendant Re/Max Valley's breach of the contracts, Alpha has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing – Alpha v. Re/Max Valley)

82.     Alpha repeats and incorporates by reference the foregoing allegations.

83.     The contracts contain an implied covenant that each party would act in good faith

11

towards each other so that each party could enjoy the full benefits of the contractual relationship.

84.     As alleged above, Defendant Re/Max Valley acted unfairly and breached the implied covenant of good faith and fair dealing.

85.     Alpha has suffered damages in an amount to be determined at trial as a result of Defendant's breach of the duty of good faith and fair dealing and is also entitled to recover pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**(Constructive Trust – Alpha v. Re/Max Valley)**

86.     Alpha repeats and incorporates by reference the foregoing allegations.

87.     Defendant Re/Max Valley has advised that Defendant Dalesandro provided Defendant Re/Max Valley with approximately $51,000.00 in funds that belong to Alpha.

88.     Defendant Re/Max Valley's retention of said funds is unjust and improper.

89.     The Court should therefore imposes a constructive trust upon this property, and require its immediate return to Alpha or to the Court, as injustice would result if Defendant Re/Max Valley is allowed to continue control of the $51,000.00 that belongs to Alpha.

**SIXTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty— TC-Hatfield v. Re/Max Valley and Dalesandro)**

90.     TC-Hatfield repeats and incorporates by reference the foregoing allegations.

91.     Defendants Re/Max Valley and Dalesandro owed a fiduciary duty to TC-Hatfield, namely to deal fairly and honestly with TC-Hatfield, to follow its instructions, to act honestly towards TC-Hatfield, and to preserve and enhance the property and earnings of TC-Hatfield's investment.

92.     Defendants breached their fiduciary duty by undertaking the acts set forth above.

93.     TC-Hatfield has suffered injury as a result of Defendants' breaches of their fiduciary duty.

94.     TC-Hatfield has been damaged by Defendants' breaches of their fiduciary duty in an amount to be determined at trial, plus pre-judgment and post-judgment interest.  TC-Hatfield is also entitled to punitive damages and to attorneys' fees as allowed by law.

### SEVENTH CAUSE OF ACTION
### (Negligent Supervision – TC-Hatfield v. Re/Max Valley)

95.     TC-Hatfield repeats and incorporates by reference the foregoing allegations.

96.     Defendant Re/Max Valley owed TC-Hatfield a duty to ensure that Defendant Re/Max Valley hired honest individuals and properly supervised its employees and agents.

97.     Defendant Re/Max Valley breached this duty by failing to properly supervise Defendant Dalesandro.

98.     TC-Hatfield has suffered injury proximately caused by Defendant Re/Max Valley's breach of its duty to properly supervise and manage Defendant Dalesandro.

### EIGHTH CAUSE OF ACTION
### (Breach of Contract – TC-Hatfield v.  Re/Max Valley)

99.     TC-Hatfield repeats and incorporates by reference the foregoing allegations.

100.    The agency agreement constituted a valid and binding contract between TC-Hatfield, on one hand, and Defendant Re/Max Valley, on the other hand.

101.    TC-Hatfield fulfilled all of its obligations under the contract.

102.    Defendant Re/Max Valley breached its obligations under the contract as set forth above.

103.    As a direct and proximate result of Defendant Re/Max Valley's breach of the

contracts, TC-Hatfield has suffered damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing – TC Hatfield v. Re/Max Valley)

104.    TC-Hatfield repeats and incorporates by reference the foregoing allegations.

105.    The contract between TC-Hatfield and Defendant Re/Max Valley contain an implied covenant that each party would act in good faith towards each other so that each party could enjoy the full benefits of the contractual relationship.

106.    As alleged above, Defendant Re/Max Valley acted unfairly and breached the implied covenant of good faith and fair dealing.

107.    TC-Hatfield has suffered damages in an amount to be determined at trial as a result of Defendant's breach of the duty of good faith and fair dealing and is also entitled to recover pre-judgment and post-judgment interest.

### TENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty— TC-Holman v. Re/Max Valley and Dalesandro)

108.    TC-Holman repeats and incorporates by reference the foregoing allegations.

109.    Defendants Re/Max Valley and Dalesandro owed a fiduciary duty to TC-Holman, namely to deal fairly and honestly with TC-Holman, to follow its instructions, to act honestly towards TC-Holman, and to preserve and enhance the property and earnings of TC-Holman's investment.

110.    Defendants breached their fiduciary duty by undertaking the acts set forth above.

111.    TC-Holman has suffered injury as a result of Defendants' breaches of their fiduciary duty.

112.    TC-Holman has been damaged by Defendants' breaches of their fiduciary duty in

14

an amount to be determined at trial, plus pre-judgment and post-judgment interest.  TC-Holman is also entitled to punitive damages and to attorneys' fees as allowed by law.

## ELEVENTH CAUSE OF ACTION
### (Negligent Supervision—TC-Holman v. Re/Max Valley)

113.   TC-Holman repeats and incorporates by reference the foregoing allegations.

114.   Defendant Re/Max Valley owed TC-Holman a duty to ensure that Defendant Re/Max Valley hired honest individuals and properly supervised its employees and agents.

115.   Defendant Re/Max Valley breached this duty by failing to properly supervise Defendant Dalesandro.

116.   TC-Holman has suffered injury proximately caused by Defendant Re/Max Valley's breach of its duty to properly supervise and manage Defendant Dalesandro.

## TWELFTH CAUSE OF ACTION
### (Breach of Contract – TC-Holman v.  Re/Max Valley)

117.   TC-Holman repeats and incorporates by reference the foregoing allegations.

118.   The agency contract constituted a valid and binding contract between TC-Holman, on one hand, and Defendant Re/Max Valley, on the other hand.

119.   TC-Holman fulfilled all of its obligations under the contract.

120.   Defendant Re/Max Valley breached its obligations under the contract as set forth above.

121.   As a direct and proximate result of Defendant Re/Max Valley's breach of the contract, TC-Holman has been damaged in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing – TC-Holman v. Re/Max Valley)

122.   TC-Holman repeats and incorporates by reference the foregoing allegations.

123.    The contract between TC-Holman and Defendant RE/Max Valley contains an implied covenant that each party would act in good faith towards each other so that each party could enjoy the full benefits of the contractual relationship.

124.    As alleged above, Defendant Re/Max Valley acted unfairly and breached the implied covenant of good faith and fair dealing.

125.    TC-Holman has suffered damages in an amount to be determined at trial as a result of Defendant's breach of the duty of good faith and fair dealing and is also entitled to recover pre-judgment and post-judgment interest.

## FOURTEENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty— Dec08Ceeree1 v. Re/Max Valley and Dalesandro)

126.    Dec08Ceeree1 repeats and incorporates by reference the foregoing allegations.

127.    Defendants Re/Max Valley and Dalesandro owed a fiduciary duty to Dec08Ceeree1, namely to deal fairly and honestly with Dec08Ceeree1, to follow its instructions, to act honestly towards Dec08Ceeree1, and to preserve and enhance the property and earnings of Dec08Ceeree1's investment.

128.    Defendants breached their fiduciary duty by undertaking the acts set forth above.

129.    Dec08Ceeree1 has suffered injury as a result of Defendants' breaches of their fiduciary duty.

130.    Dec08Ceeree1 has been damaged by Defendants' breaches of their fiduciary duty in an amount to be determined at trial, plus pre-judgment and post-judgment interest. Dec08Ceeree1 is also entitled to punitive damages and to attorneys' fees as allowed by law.

### FIFTEENTH CAUSE OF ACTION
**(Negligent Supervision – Dec08Ceeree1 v. Re/Max Valley)**

131.    Dec08Ceeree1, LLC repeats and incorporates by reference the foregoing allegations.

132.    Defendant Re/Max Valley owed Dec08Ceeree1 a duty to ensure that Defendant Re/Max Valley hired honest individuals and properly supervised its employees and agents.

133.    Defendant Re/Max Valley breached this duty by failing to properly supervise Defendant Dalesandro.

134.    Dec08Ceeree1 has suffered injury proximately caused by Defendant Re/Max Valley's breach of its duty to properly supervise and manage Defendant Dalesandro.

### SIXTEENTH CAUSE OF ACTION
**(Breach of Contract – Dec08Ceeree1 v. Re/Max Valley)**

135.    Dec08Ceree1 repeats and incorporates by reference the foregoing allegations.

136.    A valid and binding contract existed between Dec08Ceeree1, on one hand, and Defendant Re/Max Valley, on the other hand.

137.    Dec08Ceeree1 fulfilled all of its obligations under the contract.

138.    Defendant Re/Max Valley breached its obligations under the contract as set forth above.

139.    As a direct and proximate result of Defendant Re/Max Valley's breach of the contracts, Dec08Ceeree1 has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Alpha Real Estate Holdings, L.P., Plaintiff TC-Hatfield, LLC, Plaintiff  TC-Holman, LLC, and Dec08Ceeree1, LLC pray for the following relief:

A.      With respect to the first cause of action, judgment in favor of Plaintiff Alpha Real Estate Holdings, L.P. and against Defendants Re/Max Valley and Dalesandro, jointly and severally, in the amount to be determined at trial, plus pre-judgment interest, post-judgment interest, punitive damages, and attorneys' fees and costs as allowed by Utah law for breach of fiduciary duty;

B.      With respect to the second cause of action, judgment in favor of Plaintiff Alpha Real Estate Holdings, L.P. and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest;

C.      With respect to the third cause of action, judgment in favor of Plaintiff Alpha Real Estate Holdings, L.P. and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law;

D.      With respect to the fourth cause of action, judgment in favor of Plaintiff Alpha Real Estate Holdings, L.P. and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law, and costs incurred in this matter;

E.      With respect to the fifth cause of action, the imposition of a constructive trust on all Alpha's funds that Defendant Dalesandro provided to Defendant Re/Max Valley, or that are in Defendant Re/Max Valley; possession, custody, or control, and an order requiring the immediate return of those funds;

F.      With respect to the sixth cause of action, judgment in favor of TC-Hatfield, LLC and against Defendants Re/Max Valley and Dalesandro, jointly and severally, in the amount to be determined at trial, plus pre-judgment interest, post-judgment interest, punitive damages, and

attorneys' fees and costs as allowed by Utah law for breach of fiduciary duty;

      G.      With respect to the seventh cause of action, judgment in favor of TC-Hatfield, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest;

      H.      With respect to the eighth cause of action, judgment in favor of TC-Hatfield, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law;

      I.      With respect to the ninth cause of action, judgment in favor of TC-Hatfield, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law, and costs incurred in this matter;

      J.      With respect to the tenth cause of action, judgment in favor of TC-Holman, LLC and against Defendants Re/Max Valley and Dalesandro, jointly and severally, in the amount to be determined at trial, plus pre-judgment interest, post-judgment interest, punitive damages, and attorneys' fees and costs as allowed by Utah law for breach of fiduciary duty;

      K.      With respect to the eleventh cause of action, judgment in favor of TC-Holman, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest;

      L.      With respect to the twelfth cause of action, judgment in favor of TC-Holman, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law;

M.     With respect to the thirteenth cause of action, judgment in favor of TC-Holman, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law, and costs incurred in this matter;

N.     With respect to the fourteenth cause of action, judgment in favor of Dec08Ceeree1, LLC and against Defendant Re/Max Valley and Defendant Dalesandro in the amount to be determined at trial, plus pre-judgment and post-judgment interest;

O.     With respect to the fifteenth cause of action, judgment in favor of Dec08Ceeree1, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law;

P.     With respect to the sixteenth cause of action, judgment in favor of Dec08Ceeree1, LLC and against Defendant Re/Max Valley in the amount to be determined at trial, plus pre-judgment and post-judgment interest at the rate allowed by law, and costs incurred in this matter; and

Q.     All other relief which this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

DATED this 2nd day of February 2011.

### VANTUS LAW GROUP, P.C.

By:    /s/ Michael C. Barnhill
         Attorneys for Plaintiffs

Plaintiffs' address:
Alpha Real Estate Holdings, L.P
c/o Vantus Law Group, P.C.
3165 E. Millrock Drive, Suite 160
Salt Lake City, Utah 84121

## CERTIFICATE OF SERVICE

THE UNDERSIGNED hereby certifies that a true and correct copy of the foregoing document was filed using the ECF system, and was therefore served upon the following by electronic mail:

Barbara K. Berrett
Mark D. Taylor
BERRETT & TAYLOR, L.C.
Ken Garff Building, Suite 1050
405 South Main Street
Salt Lake City, Utah 84111

_____